IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00781-PAB-CBS

CHRISTOPHER M. ORWIG,

    Plaintiff,

v.

WARDEN CHAPDELANE, Sterling Corr. Facility Warden (Official & Individual Capacity),
CAPTAIN FELICIA BROOKS, Sterling Corr. Facility Kitchen Manager (Official & Individual Capacity),
LT. STEVEN BADE, Sterling Corr. Facility Hearings Disciplinary Officer (Official & Individual Capacity),
OFFICER CLARK, Sterling Corr. Facility Correctional Officer (Official & Individual Capacity),
LT. WAGNER, Sterling Corr. Facility Religous [sic] Programs Volunteer Coordinator (Official & Individual Capacity),
MAJOR JEFFREY REVORD, Sterling Corr. Facility Food Service (Official & Individual Capacity), and
MAJOR ROBERT KEISEL, Sterling Corr. Facility Custody Control Manager (Official & Individual Capacity),

    Defendants.

## ORDER

This matter is before the Court on Magistrate Judge Craig B. Shaffer's Recommendation Regarding Defendants' Motion to Dismiss [Docket No. 30] dated February 16, 2017.  The magistrate judge recommends that the Court grant defendants' Motion to Dismiss the Amended Complaint, Docket No. 14, filed July 18, 2016.  Plaintiff Christopher M. Orwig filed timely objections on February 27, 2017.  Docket No. 31.  In light of plaintiff's *pro se* status, the Court will construe plaintiff's objections liberally, but will not advocate for him.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**I. BACKGROUND**

Plaintiff Christopher M. Orwig is an inmate at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC"). On April 4, 2016, he filed a complaint alleging that his right to free exercise of religious beliefs was violated because he is not allowed to carry a pocket-sized King James Version of the Bible wherever he goes at SCF. Docket No. 1 at 5-7. In his amended complaint, Mr. Orwig claims "my beliefs . . . require my [sic] to keep my scriptures on my person." Docket No. 6 at 4. He alleges that he had been doing so for "well over one year." Id.

Mr. Orwig claims that defendants have discriminated and retaliated against him based on his religious practice by not allowing him to carry his Bible with him at all times. Docket No. 6 at 4. Plaintiff states that, on December 1, 2015, plaintiff attempted to bring his Bible with him to his job in the SCF kitchen. Id. Plaintiff alleges that Officer Clark confiscated his Bible, wrote him up, and taunted him. Id. Officer Clark, after acknowledging that other prisoners were allowed to carry religious items, allegedly said, "when you tie a string to your Bible and wear it around my [sic] neck, then you could bring it in." Id. at 6. Later that morning, Captain Felicia Brooks informed plaintiff that, under Rules 302 and 1401 of SCF's Posted Operational Rules ("PORs"), inmates are forbidden from bringing personal property into the kitchen. Id. at 4, 7. Plaintiff refused to work without his Bible. Id. at 4. On January 8, 2016, plaintiff was charged with a Code of Penal Discipline ("COPD") violation for "failure to work" by Lt. Wagner. Id. at 5, 8. He was found guilty by Lt. Steven Bade and "assessed a penalty of loss of 10 days good time." Id. at 8.

Plaintiff alleges that Major Jeffrey Revord and Major Robert Keisel are "responsible for" SCF PORs 302 and 1401, respectively, and that Warden Chapdelane had the power "to change or make concession" to SCF's policies. Docket No. 6 at 6-7.

Plaintiff's first claim alleges that defendants violated his rights to freely exercise his religious beliefs and practices under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Docket No. 6 at 6. Plaintiff's second claim is that the confiscation of his Bible and the COPD conviction for failure to work were in retaliation for his free exercise of religion in violation of the First Amendment. *Id*. at 8. The legal basis for plaintiff's third claim is unclear. He lists his claim as "Establishment of Religion by Lt. Wagner" and alleges that Lt. Wagner "met with plaintiff and informed him that his doctrine of Religion was unacceptable because it violates a POR concerning the possession of books outside of the PODs or programs building, but that I was welcome to attend the Christian Services provided at SCF." *Id*. at 9. Plaintiff alleges that those "services are contrary to my religious doctrine." *Id*.

## II. STANDARD OF REVIEW

For dispositive motions, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

**III. ANALYSIS**

Plaintiff makes four objections to the Recommendation. Docket No. 31. Plaintiff's second and third objections relate to a single issue; therefore, the Court will discuss them together.

### A.  Eleventh Amendment Immunity

First, plaintiff objects to the "Magistrate Judge's finding that the defendants are entitled to qualified immunity in this case." Docket No. 31 at 1. Plaintiff makes this objection in reference to the Recommendation's analysis on page six, subsection I. *Id*.

Plaintiff misreads the Recommendation. While the magistrate judge noted that defendants raised a qualified immunity defense in discussing the Standard of Review, Docket No. 30 at 5-6, the Recommendation's analysis is not premised on qualified immunity. *See generally id*. at 6-17. Rather, subsection I is entitled "Eleventh Amendment Immunity" and finds that the defendants are immune from suit in their official capacities under the Eleventh Amendment. *Id*. at 6-7. Accordingly, the Court will overrule plaintiff's first objection and grant the motion to dismiss plaintiff's claims against defendants in their official capacities.

### B.  Plaintiff's First Amendment and RLUIPA Claims

Second, plaintiff objects to the Recommendation's finding that "his Amended Complaint is devoid of any factual allegations to support his contention" that defendants' actions substantially burdened his religious practice. Docket No. 31 at 2; *see* Docket No. 30 at 9 ("The court concludes that Plaintiff's Amended Complaint is devoid of any factual allegations to support his contention. *See* Doc. 6."). Plaintiff refers

to the allegations in the amended complaint that his Bible was confiscated, "that carrying his religious scriptures at all times is his sincerely held religious belief, and that this practice was violated." Docket No. 31 at 2, ¶ 2. (citing Docket No. 6 at 6, ¶¶ 1, 4).[1] Plaintiff also objects to the magistrate judge's "finding that Plaintiff's allegations at best demonstrate an inconvenience to his religious rights and practices." Id., ¶ 3; see Docket No. 30 at 12 ("Rather, Plaintiff's allegations at best demonstrate an inconvenience to Plaintiff, which is insufficient to state a claim under the First Amendment."). He argues that he "has demonstrated his dedication to his practice with firmness." Docket No. 31 at 2-3, ¶ 3. He continues that, "[i]f prohibiting him from carrying the Bible at all times were merely an inconvenience, he would not have been willing to be subject to a class 1 write up, restricted population, and jeopardize his otherwise flawless prison conduct which could jeopardize his early parole, and other benefits of living write-up free." Id.

The magistrate judge found that "Plaintiff's Amended Complaint (Doc. 6) contains no allegations as to why he must carry his Bible on his person at all times or why the prison policies, as alleged, impose a substantial burden on the Plaintiff's religious practice." Docket No. 30 at 12. He reasoned that "the prison policies, as alleged, do not require participation in conduct that would violate Plaintiff's religious beliefs, nor do they prevent participation in conduct motivated by Plaintiff's religious beliefs." Id. He found it sufficient that plaintiff "is permitted to have his Bible in his POD and to carry it to and from recognized programs." Id. He concluded that the "Plaintiff's

---

[1] Plaintiff states that his Bible was eventually returned. Docket No. 20 at 2.

allegations at best demonstrate an inconvenience to Plaintiff, which is insufficient to state a claim under the First Amendment." *Id*.

"Under the First . . . Amendment[ ], inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Religious practices need not be central or required in order to be protected under the First Amendment. *Kay v. Bemis*, 500 F.3d 1214, 1220 (10th Cir. 2007). In 2000, Congress passed RLUIPA to "secure redress for inmates who encountered undue barriers to their religious observances." *Cutter v. Wilkinson*, 544 U.S. 709, 716-17 (2005). Protection under RLUIPA extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

"The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Kay*, 500 F.3d at 1218. Defendants do not argue that plaintiff's beliefs are not religious or are not sincerely held. Docket No. 14 at 7; Docket No. 30 at 9. Instead, they argue that plaintiff has not sufficiently pleaded that the PORs constitute a substantial burden, instead of an inconvenience. Docket No. 14 at 7.

To state a free exercise claim, an incarcerated plaintiff must show that a prison regulation "substantially burdened [his] sincerely-held religious beliefs." *Kay*, 500 F.3d at 1218 (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). A violation of the First Amendment's free exercise clause can occur not only due to outright

prohibitions, but also where government indirectly coerces or penalizes the free exercise of religion. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (discussing *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists." *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981). Under the RLUIPA, "religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief." *Abdulhaseeb*, 600 F.3d at 1315.

The Court agrees with plaintiff that he has sufficiently alleged that the defendants' actions substantially burdened his religious practice. The prohibition of him carrying his Bible outside of his POD (other than carrying it to and from religious services) compelled plaintiff to give up his prison work and incur punishment for not working. Docket No. 6 at 4-7. Thus, plaintiff was forced to "choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion in order to accept work, on the other hand." *Abdulhaseeb*, 600 F.3d at 1316 (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

Such circumstances indicate substantial pressure on plaintiff to "modify his behavior and to violate his beliefs" that require he keep his scriptures on his person at all times. *Thomas*, 450 U.S. at 718. The case relied on by the magistrate judge, *Vasquez v. Ley*, 1995 WL 694149 (10th Cir. Nov. 24, 1995) (unpublished), is distinguishable. In *Vasquez*, the plaintiff was allowed to keep one of his three rosaries, but complained "that he was not allowed to keep the particular rosary he preferred." *Id*. at *2. By contrast, the regulations Mr. Orwig complains about do not involve his preference for one religious practice over another, but rather prohibit him from adhering to one of his religious beliefs.

Further, plaintiff has alleged more than an inconvenience. By refusing plaintiff permission to work in the kitchen while in possession of his pocket Bible, and by punishing him for not working without it, "the government present[ed] the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief." *Abdulhaseeb*, 600 F.3d at 1315. Accordingly, plaintiff's allegations show a direct conflict between the prison's policies and plaintiff's religious practices. This makes plaintiff's situation distinguishable from cases where courts have found a de minimis burden or mere inconvenience to a prisoner's religious beliefs. *See, e.g., Pfeil v. Lampert*, 11 F. Supp. 3d 1099, 1113 (D. Wyo. 2014), *aff'd*, 603 F. App'x 665 (10th Cir. 2015) ("The policy prohibiting hardbound books, while possibly an inconvenience to him, does not prevent Plaintiff from practicing his religion."); *DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011) ("DeMoss's complaint was deficient because the facts, as pled, did not

demonstrate a plausible conflict between [the prison's] policies and his religious practice."). In *DeMoss,* the plaintiff alleged that the prison's policies prevented him from carrying the Qur'an with him at all times, including while on job assignments, and claimed that he needed to do so because it "provided him with useful studies and development toward proper morality." *DeMoss*, 636 F.3d at 152. The court found that the plaintiff's allegations were deficient because he "did not allege that these restrictions required him to 'act in a way that violated his religious beliefs.'" *Id*. (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)); *see also Pfeil*, 11 F. Supp. 3d at 1113 (D. Wyo. 2014) (finding the plaintiff not prevented from practicing his religion because "[s]oftbound copies of each book he wants/needs for his religious practice is available to him."). By contrast, Mr. Orwig does not carry his Bible with him at all times for ease of access for study, but because he believes that he must have the Bible on his person. Docket No. 20 at 6. For plaintiff, working without his pocket Bible would be acting in violation of his religious beliefs. Docket No. 6 at 4. Thus, Mr. Orwig has alleged a "constructive prohibition" of his professed religious exercise, not a "moderate impediment," because defendants' alleged actions required him to give up a "mandatory and significant religious" practice. *Abdulhaseeb*, 600 F.3d at 1325 (Gorsuch, J., concurring). Because plaintiff has alleged sufficient facts to show that he was placed under substantial pressure to modify his behavior or violate his beliefs, he has sufficiently stated a claim under both the First Amendment and RLUIPA. *Id.* at 1315 (explaining that the substantial pressure test under the RLUIPA mirrors the same test applied under the First Amendment).

If a prisoner satisfies the substantial burden inquiry, as here, prison officials may then "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Kay*, 500 F.3d at 1218 (internal quotation marks omitted) (alterations in original). "The burden then returns to the prisoner to show that these articulated concerns were irrational." *Id.* at 1218 n.2 (internal quotation marks omitted). To determine the reasonableness of the regulation "[a]t that point, courts balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 . . . (1987)." *Id*. at 1218-19. Defendants did not attempt to identify the legitimate penological interests underlying the confiscation of plaintiff's Bible or the PORs, *see generally* Docket No. 14, and thus the Court cannot conclude that defendants were justified in the allegedly impinging conduct. *Boles*, 486 F.3d at 1182. Accordingly, the Court will sustain plaintiff's second and third objections and deny the motion to dismiss insofar as it argues he failed to state a claim for free exercise of religion.

### C. Punitive Damages

Finally, plaintiff objects to the magistrate judge's determination that he "is not entitled to punitive damages." Docket No. 31 at 3, ¶ 4. He argues that his allegations that "Officer Clark confiscated his Bible, taunted him with it in front of 4 officers and on camera and said he could bring it in when he could tie a string to it and wear it around his neck" are sufficient to support a claim for punitive damages because they show "discrimination as well as evil intent on the part of Officer Clark and Brooks." *Id*.

The magistrate judge reasoned that "confiscating Plaintiff's pocket Bible in accordance with prison policies does not rise to the level of evil intent or reckless or

callous indifference to his constitutional rights sufficient to recover punitive damages." Docket No. 30 at 17. He found that there were no allegations to support an inference that defendants' actions were "motivated by animosity towards Plaintiff's religious practices or indifference to Plaintiff's needs." *Id*.

The Court agrees that plaintiff's allegations are insufficient to state a claim for punitive damages. According to plaintiff's allegations, after his Bible was confiscated, he attempted to get it back by analogizing it to the "personal religious items" carried by other prisoners "such as Rosaries, Yarmulka, Crosses, and Islamic prayer beads, etc." Docket No. 6 at 6. In response, Officer Clark allegedly said, "when you tie a string to your Bible and wear it around [your] neck, then you could bring it in." *Id*. These allegations do not show evil intent or reckless, callous indifference to plaintiff's constitutional rights. At best, they show that Officer Clark disagreed with plaintiff's analogy between his Bible and the items carried by other prisoners, i.e., suggesting that if plaintiff's Bible were more analogous to the crosses worn around the necks of other prisoners then Officer Clark would not object to it under the prison's rules. While plaintiff alleges that this was taunting, there is nothing to indicate that Officer Clark's suggestion would not have worked as an accommodation consistent with plaintiff's professed religious beliefs requiring him to carry his scriptures with him at all times. That is, while Mr. Orwig may have been offended by the suggestion that he wear his pocket Bible on a string around his neck, his allegations do not support an inference that the suggestion was motivated by malice, particularly because there is no suggestion that wearing his pocket Bible on a string would be contrary to his religious beliefs. Accordingly, the Court will overrule this objection and dismiss plaintiff's claim

for punitive damages.

### D. Unobjected-to Rulings

As for the unobjected-to portions of the Recommendation, in the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn,* 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"). In this matter, the Court has reviewed the unobjected-to portions of the Recommendation to satisfy itself that there is "no clear error on the face of the record."[2] Fed. R. Civ. P. 72(b), Advisory Committee Notes. Accordingly, the Court will dismiss plaintiff's claims against defendants Revord and Keisel and plaintiff's claims for monetary damages.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation Regarding Defendants' Motion to Dismiss [Docket No. 30] is **ACCEPTED** in part and **REJECTED** in part as set forth in this order. It is further

**ORDERED** that defendants' Motion to Dismiss the Amended Complaint [Docket No. 14] is **GRANTED** in part and **DENIED** in part as set forth in this order. Plaintiff's

---

[2] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

claims against all defendants in their official capacities are dismissed.  Plaintiff's second and thirds claims are dismissed.  Plaintiff's requests for compensatory and punitive damages are dismissed.  Plaintiff's claims against Major Jeffrey Revord and Major Robert Keisel are dismissed.

DATED March 17, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge