IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-00781-PAB-SKC

CHRISTOPHER M. ORWIG,

      Plaintiff,

v.

DEAN WILLIAMS,[1] in his official capacity,
FELICIA BROOKS, in her individual capacity,
STEVEN BADE, in his individual capacity, and
EARLLEENA CLARK, in her individual capacity,

      Defendants.

---

**ORDER**

---

This matter is before the Court on Defendant Dean Williams' ("Williams") Motion for Summary Judgment [Docket No. 93], the Individual Defendants'[2] Motion for Summary Judgment [Docket No. 94], and the Individual Defendants' Unopposed Motion for Judgment on the Pleadings on the Individual-Capacity RLUIPA Claims [Docket No. 107]. The Court has jurisdiction pursuant to 28 U.S.C. §1331.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, a public officer's successor is automatically substituted as a party. Dean Williams succeeded Rick Raemisch as the Executive Director of the Colorado Department of Corrections in January 2019. Thus, Dean Williams is substituted for Rick Raemisch, and the Court will refer to all pleadings filed by Raemisch as being filed by Dean Williams.

[2] Felicia Brooks, Steven Bade, and Earlleena Clark ("the individual defendants") have been sued in their individual capacities. *See* Docket No. 94.

## I. BACKGROUND[3]

Plaintiff Christopher M. Orwig is currently incarcerated in the Colorado Department of Corrections ("CDOC").  Docket No. 93 at 1, ¶ 1.  At the time of the underlying incident, plaintiff was housed at the Sterling Correctional Facility ("SCF").  *Id.* at 2, ¶ 2.  Plaintiff identifies himself as a Messianic Jew.  *Id.*, ¶ 5.  It is his religious belief that he must carry the Bible "on his person or in his immediate vicinity at all times," even while working.  *Id.*, 2, ¶¶ 6-7; Docket No. 114 at 2, ¶¶ 6-7; Docket No. 119 at 2, ¶¶ 6-7.[4] To comply with his religious beliefs, plaintiff always carries a copy of the Bible with him, except during showers and cell "shakedowns."  Docket No. 93 at 3, ¶ 13.  The Bible that plaintiff carries has a soft cover and is approximately three inches long, two inches wide, and one inch thick.  Docket No. 114 at 8, ¶ 88.

### A.   Prison Rules

Posted Operational Rules ("POR") are facility- and unit-specific restrictions on the items that inmates may bring into a specific unit or area within a CDOC facility.  Docket No. 93-3 at 17-18, 63:1-65:15.  SCF POR 302 governs the conduct of inmate food service workers and prohibits kitchen workers from bringing personal items into the kitchen.  *See* Docket No. 94 at 4, ¶ 19; *see also* Docket No. 93-2 at 7.  POR 302 does not serve as a complete ban on all personal items, as kitchen workers may wear religious medallions and carry rosaries in their pockets while working in the kitchens.

---

[3] These facts are undisputed unless otherwise noted.

[4] Plaintiff objected to defendants' classification of this belief as a "personal belief" as opposed to a "religious belief."  *See* Docket No. 113 at 1, ¶ 4; Docket No. 114 at 2, ¶ 6.  In their replies, defendants do not dispute this clarification.  Docket No. 119 at 2, ¶ 6; Docket No. 120 at 2, ¶ 4.

Docket No. 94 at 7, ¶ 46.  Further, Muslim kitchen workers may bring their prayer rugs and Qurans into the kitchen during Ramadan.  Docket No. 94 at 7, ¶ 47.  These items must be stored in the Sergeant's office, except during their prayers, and are not allowed on the inmate's person.  *Id.*  Additionally, inmates may carry on their person a "medicine bag,"[5] and can carry the medicine bag "anywhere they go."  Docket No. 113 at 8, ¶ 84.

AR 800-01 is a CDOC-wide policy governing the practice of religion.  Docket No. 93 at 3, ¶ 16.  AR 800-01 "acknowledges the right of inmates to engage in religious activities and establishes guidelines and consistent standards for the practice of religion."  *Id.*  AR 800-01 requires CDOC facilities like SCF to "[e]nsure that offenders have the opportunity to participate in practices deemed essential" to a specific faith group.  Docket No. 93-4 at 7.  This is limited in several ways.  For instance, AR 800-01 does not allow religious practices that are considered a threat to the safety of CDOC staff, volunteers, or offenders or practices that "disrupt[] the security or good order of the facility."  *Id.*

AR 800-01 lists a number of personal, faith-based items that may be worn, carried in a pocket, or used outside of a cell.  Docket No. 93 at 3, ¶ 17; Docket No. 93-4 at 11.  Such items include medicine bags, medallions, prayer beads, and rosaries.  Docket No. 93-4 at 10.  However, personal faith items may not be "displayed or used in general population."  *Id.* at 11 (listing certain excepted items).  Upon a CDOC employee's request, inmates must open and present faith property for a visual and

---

[5] Kirk Machin, the CDOC's faith and citizen programs coordinator, testified that a "medicine bag" is "for Native American offenders" and is "a leather strap with a small leather bag" that measures "three inches by four inches or so."  Docket No. 93-3 at 14, 50:1-17.

physical inspection.  *Id.* at 9.  An inmate's refusal "shall result in confiscation and subsequent inspection" of the property in question.  *Id.*

Bibles are not listed as allowable personal faith property.  Docket No. 93-4 at 10. Inmates do have, however, the ability to seek to amend the recognized faith group practices or property item allowances by submitting Form 800-01J, "Amending Faith Group Practices."  Docket No. 93 at 3, ¶¶ 17-18; Docket No. 93-4 at 3; *see also* Docket No. 93-4 at 3, ¶ IV.B.

## B.   The Incident

Plaintiff was a cook in the prison's Kosher Kitchen ("kitchen").  Docket No. 93 at 5, ¶ 24.  Plaintiff alleges that, in September 2014, he began bringing his pocket Bible to his work assignment, in adherence with his sincerely-held religious belief.  Docket No. 79 at 4, ¶ 19.  Plaintiff maintains that each time he went through security screening, he openly presented his Bible for inspection.  Docket No. 79 at 5, ¶¶ 27.  According to plaintiff, while the corrections officer would "occasionally" inspect the Bible, he was always permitted to enter the kitchen with the Bible in his possession.  *Id.*, ¶ 28.  It is undisputed that, one week before the incident, plaintiff was allowed to work in the kitchen with his Bible on his person.  Docket No. 114 at 7, ¶ 79.

In late November 2015, a corrections officer conducted plaintiff's security screening as plaintiff entered the kitchen and noticed plaintiff's pocket Bible.  Docket No. 94 at 8, ¶ 51.  He and defendant Earlleena Clark gave plaintiff a warning on the basis that POR 302 prohibited him from carrying his Bible in the kitchen.[6]  *Id.*, ¶¶ 51-53.

---

[6] A second corrections officer was involved in issuing the warning, but was not named as a defendant in this matter. *See* Docket No. 94 at 8, ¶ 51.

Plaintiff informed Clark that his religious doctrine commands him to carry his Bible at all times, ignored the warning, and continued to bring his Bible to the kitchen. *Id.*, ¶ 54.

On December 1, 2015, plaintiff reported to his work assignment with his pocket Bible, which Clark confiscated. *Id.*, ¶ 55. Plaintiff worked without his Bible for approximately an hour and a half until defendant Felicia Brooks came to work. *Id.*, ¶ 56. Brooks confirmed to plaintiff that the policy prohibited him from having his Bible in the kitchen. *Id.*, ¶ 57. Plaintiff then informed Brooks that he felt nauseous and that he could no longer work. *Id.*, ¶ 58. Brooks told plaintiff to return to work, and plaintiff refused. *Id.* at 9, ¶ 59. Brooks called security to have plaintiff returned to his housing unit. *Id.*, ¶¶ 59-60.

Plaintiff was issued an incident report for failure to work. *Id.*, ¶ 60. A disciplinary officer, defendant Steven Bade, reviewed the incident report and conducted an investigation to determine whether disciplinary charges should be filed. *Id.* Bade determined that the preponderance of evidence supported charging plaintiff with failure to work and issued a notice of charge. *Id.*, ¶ 64. A hearing officer determined that plaintiff was guilty of failure to work under the Code of Penal Discipline ("COPD"). *Id.* at 9, ¶ 66. As a result of this charge (the "COPD conviction"), plaintiff lost 10 days of good time credit that he had earned toward his sentence and was removed from his job in the kitchen. *Id.*, ¶¶ 69-70. He was reassigned to a program assignment in the "academic loop," which is a paid opportunity to participate in certain educational classes. *Id.* at 10, ¶¶ 70-71.

Plaintiff filed this lawsuit on April 4, 2016. Docket No. 1. After being granted leave to amend his complaint on two occasions, he filed the operative complaint, his

Second Amended Complaint [Docket No. 79], raising claims of (1) a violation of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, against all defendants – Williams in his official capacity and the individual defendants in their individual capacities; and (2) a violation of his First Amendment free exercise of religion rights under 42 U.S.C. § 1983 against all defendants. Docket No. 79 at 9-10. Defendant Williams was sued in his official capacity while defendants Brooks, Bade, and Clark were sued in their individual capacities. *See id.* Plaintiff argues that his rights under RLUIPA and the First Amendment were violated when he was forced to work without his Bible and was then punished when he refused to do so. *Id.* at 10, ¶¶ 68-69; *id.* at 11, ¶ 78. Plaintiff seeks an injunction expunging his COPD conviction as well as money damages. *Id.* at 11-12, ¶ 80.

On January 21, 2019, the individual defendants filed a Stipulation to Dismiss Individual-Capacity RLUIPA Claims [Docket No. 92] pursuant to Rule 41 of the Federal Rules of Civil Procedure on the basis that RLUIPA provides no cause of action for individual-capacity claims. The Court denied the parties' request to dismiss the individual claims on the basis that Rule 41 "is not an appropriate mechanism for dismissing less than all claims against a particular defendant in an action." Docket No. 96 at 1. Thereafter, the individual defendants filed their unopposed Motion for Judgment on the Pleadings on the Individual-Capacity RLUIPA Claims pursuant to Federal Rule of Civil Procedure 12(c) [Docket No. 107].

On January 22, 2019, defendant Williams filed a motion for summary judgment, Docket No. 93, as did the individual defendants. Docket No. 94. Plaintiff responded to

both motions, *see* Docket Nos. 113 and 114, to which defendant Williams [Docket No. 119] and the individual defendants [Docket No. 120] replied.

## II.  LEGAL STANDARD

### A.   Rule 12(c) Motion for Judgment on the Pleadings

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Therefore, under Rule 12(c), the court examines whether the complaint's allegations are "enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009); *see id.* at 1223.

### B.   Motion for Summary Judgment

The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 325).  The nonmoving party may not rest solely

on the allegations in the pleadings but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact. *Concrete Works*, 36 F.3d at 1517. Once the motion has been properly supported, the burden shifts to the nonmovant to demonstrate that summary judgment is not proper. *Id.* at 1518. All evidence must be viewed in the light most favorable to the party opposing the motion. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999); *Nutting v. RAM Sw., Inc.*, 106 F. Supp. 2d 1121, 1123 (D. Colo. 2000).

## III. ANALYSIS

### A. Individual Defendants' Motion for Judgment on the Pleadings

The individual defendants argue that they are entitled to judgment on the pleadings on plaintiff's RLUIPA claim on the basis that RLUIPA does not provide a cause of action for individual-capacity claims. Docket No. 107 at 3. The Tenth Circuit

has determined that "there is no cause of action under RLUIPA for individual-capacity claims." *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012). "The only relief available . . . under RLUIPA is declaratory and injunctive relief against defendants in their *official* capacities." *Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013) (unpublished) (emphasis added) (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) and *Stewart*, 701 F.3d at 1335). Plaintiff's RLUIPA claim is brought against Williams in his official capacity and the individual defendants in their individual capacities. *See generally* Docket No. 79. Under *Stewart*, plaintiff's individual-capacity claims may not proceed. *See, e.g., Weinstein v. Woitte*, No. 17-cv-02506-CMA-NYW, 2018 WL 3899079, at *3 (D. Colo. Aug. 14, 2018) (citing *Stewart*, 701 F.3d at 1334) ("To the extent Plaintiff sued [defendant] in his individual capacity, such claim cannot proceed under RLUIPA.").[7] Thus, the Court will grant the individual defendants' motion for judgment on the pleadings and dismiss plaintiff's RLUIPA claim against the individual defendants.

### B.  Motions for Summary Judgment

#### 1.  *Religious Land Use and Institutionalized Persons Act*

While plaintiff's RLUIPA claim against the individual defendants has been dismissed, his claim against Williams in his official capacity remains. Williams argues that he is entitled to summary judgment on plaintiff's RLUIPA claim because plaintiff cannot show that the restriction at issue – POR 302 – constitutes a "substantial burden" on plaintiff's religious exercise. Docket No. 93 at 17. In the alternative, Williams argues

---

[7] Plaintiff concedes that RLUIPA provides no cause of action for public officials in their individual capacities. *See* Docket No. 107 at 2.

that, even if plaintiff can show that POR 302 substantially burdens plaintiff's religious practice, the rule is the least restrictive means of furthering a compelling governmental interest. *Id.* at 18-20.

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). In pertinent part, RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, a plaintiff bears the burden of showing that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010)). If the plaintiff can meet this burden, the burden then shifts to the defendant to show that the burden serves a compelling interest and is the least restrictive means of furthering that interest. *Yellowbear v. Lampert*, 741 F.3d 48, 56-57 (10th Cir. 2014).

The parties do not dispute that plaintiff's belief that he must keep his Bible on his person or in his immediate vicinity at all times is religious in nature and sincerely held. *See* Docket No. 93 at 2, ¶¶ 6-7; Docket No. 114 at 2, ¶¶ 6-7; Docket No. 119 at 2, ¶¶ 6-7; *see also* Docket No. 93 at 12 n.1 ("For the purpose of this motion only, [Williams] does not dispute [that plaintiff's] beliefs are sincerely held."). Instead, Williams argues

that plaintiff cannot demonstrate the existence of a substantial burden on the exercise of that sincerely held religious belief.  *See* Docket No. 93 at 17-18.

### a.  Substantial Burden

The Tenth Circuit has explained that, in the RLUIPA context:

> a burden on a religious exercise rises to the level of being "substantial" when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief – for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise.

*Yellowbear*, 741 F.3d at 55 (citing *Abdulhaseeb*, 600 F.3d at 1315).  Under the first two categories, "state laws or practices that require action or inaction in violation of a sincerely held religious belief amount to 'substantial' burdens on the exercise of religion."  *Id.*  Under the third category, "a burden can be 'substantial' even if it does not compel or order the claimant to betray a sincerely held religious belief.  It is enough that the claimant is presented with a choice in which he faces considerable pressure to abandon the religious exercise at issue."  *Id.*  "A 'substantial burden' need not be a complete or total one."  *Id.*

Williams argues that plaintiff cannot show a substantial burden because, had plaintiff followed the DOC policy and not brought his Bible to work, "he would have only been without his Bible for 28 hours a week," "when he could not use it for its intended purpose anyway."  Docket No. 93 at 18.  Further, Williams contends that the one time that plaintiff was disciplined for refusing to work without his Bible "was not a substantial burden" because he received a programming assignment that was equal or preferable

to his previous work assignment and "lost just 10 days good time credit on his 9-year sentence." *Id.*

The Court disagrees. The undisputed facts demonstrate that plaintiff was barred from bringing his pocket Bible to his kitchen work assignment, which contravenes his sincerely held religious beliefs. Docket No. 93 at 9, ¶¶ 59-61. When he refused to work without his Bible, he was disciplined. *Id.* at 9-10, ¶¶ 63-65. The Court has previously found that "refusing plaintiff permission to work in the kitchen while in possession of his pocket Bible, and by punishing him for not working without it" created a "Hobson's choice – an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief." *Orwig v. Chapdelane*, No. 16-cv-00781-PAB-CBS, 2017 WL 1208802, at *4 (D. Colo. Mar. 17, 2017) (quoting *Abdulhaseeb*, 600 F.3d at 1315). The Court found that plaintiff had alleged a "constructive prohibition" of his religious exercise rather than a "moderate impediment." *Id.*[8]

In *Blankenship v. Setzer*, 681 F. App'x 274 (10th Cir. 2017) (unpublished), the Tenth Circuit found a substantial burden on an inmate's exercise of his religion where the defendants did not permit the plaintiff to bring his Bible with him during transport from prison to county jail to attend mandatory court dates. *Id.* at 277. Over the course

---

[8] Williams argues that, while the Court has previously determined that plaintiff had alleged sufficient facts to show a substantial burden, "the facts developed during discovery show Plaintiff cannot prove this element at trial." Docket No. 93 at 13. Williams does not assert what facts he now believes render this issue so clear that a reasonable jury could not find that plaintiff's inability to have his Bible at work, for 28 hours per week, and his dock of ten days of good time credit, could not constitute a substantial burden on his religious practices. Thus, the Court rejects Williams' argument.

of his three visits to the county jail, the plaintiff was deprived of his Bible for three to four days at a time for a total of ten days. *Id.* Because the plaintiff "asserted that his religion requires him to read and study the Bible daily, deprivation of a Bible for longer than a period of 24 hours forced him to . . . violate his religious beliefs in order to attend his mandatory court dates." *Id.* As a result, the court determined that the defendants had placed a substantial burden on plaintiff's religious exercise. *Id.*

Plaintiff's situation here is analogous to that in *Blankenship.* By forcing plaintiff to either violate his sincerely held religious beliefs or violate facility policy by refusing to work, resulting in discipline, defendants put "considerable pressure" on plaintiff to violate his beliefs and placed a substantial burden on plaintiff's ability to freely exercise his religion.[9] Thus, Williams must demonstrate that the burden was the least restrictive means of furthering a compelling governmental interest.

### b. Least Restrictive Means of Furthering Compelling Governmental Interest

Because plaintiff has demonstrated that POR 302 constitutes a substantial burden on plaintiff's religious exercise, the burden shifts to Williams to show that the burden it imposes on plaintiff serves a "compelling governmental interest" and is the "least restrictive means" of accomplishing that interest. 42 U.S.C. 2000cc-1(a); *see also*

---

[9] The Court finds Williams' argument that, had plaintiff complied with POR 302, he would have been without his Bible for "only" 28 hours per week, "when he could not use it for its intended purpose anyway," to be unavailing. Because plaintiff's belief is not based on use of the Bible, but possession of it, it is irrelevant whether plaintiff can use the Bible during those 28 hours. Williams essentially concedes that plaintiff's compliance with POR 302 would result in him violating his sincerely held religious beliefs for 28 hours per week. *See* Docket No. 93 at 18 (stating that plaintiff "would have only been without his Bible for 28 hours a week"). The Court finds that plaintiff has demonstrated a substantial burden on his religious exercise.

*Abdulhaseeb*, 600 F.3d at 1318. In assessing RLUIPA claims in the prison context, courts are to extend "due deference to the experience and expertise of prison and jail administrators" in establishing the necessary regulations and procedures to maintain prison security. *Yellowbear*, 741 F.3d at 59 (noting that this deference "does not extend so far that prison officials may declare a compelling governmental interest by fiat."). Here, Williams argues that the undisputed facts demonstrate that the government has a compelling interest in preventing inmates from smuggling contraband (i.e., drugs, weapons, or gang related communications) through the kitchen, or, in broader terms, has a compelling interest in prison security.[10] Docket No. 93 at 4, ¶ 20; at 6, ¶ 36. Williams states that items such as "razor blades, sharp metal objects, and notes advocating facility violence or violence against other offenders" have been found in books at SCF. *Id.* at 6, ¶ 38. The Court agrees with Williams. Plaintiff does not dispute that a compelling governmental interest exists here, *see* Docket No. 114 at 15-16, and the Supreme Court has recognized "that prison security is a compelling state interest." *Cutter*, 544 U.S. at 725 n.13. Thus, the Court finds that Williams has met the first half of his burden by demonstrating a compelling governmental interest.

---

[10] Additionally, Williams appears to argue that the CDOC has a compelling governmental interest "in not granting an *ad hoc* exception to the rules regarding carrying books solely for Plaintiff[,]" and "in [plaintiff] performing his job of preparing food for inmates who require a Kosher meal." Docket No. 93 at 18-19. However, "the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the highest order." *Yellowbear*, 741 F.3d at 60 (internal quotation omitted). Williams' argument that defendants' interests in not granting an *ad hoc* exception and having plaintiff prepare food in the kitchen without reading his Bible are conclusory. *See* Docket No. 93 at 4-6, ¶¶ 20, 36-39. Thus, the Court does not consider those two interests as "compelling." *See Yellowbear*, 741 F.3d at 60.

Next, Williams must demonstrate that the POR at issue here is the least restrictive means of furthering that compelling interest.[11] RLUIPA contemplates a focused inquiry that requires the government to "demonstrate that the compelling interests test is satisfied through application of the challenged law to the . . . particular claimant whose sincere exercise of religion is being substantially burdened." *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015) (citation and quotation omitted). Courts must "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants" and "look to the marginal interest in enforcing" the challenged government action in that particular context. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726-27 (2014) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 431 (2006)).

To meet this burden, Williams must "refute . . . alternative schemes" suggested by plaintiff to achieve that same interest and demonstrate why those alternatives are inadequate. *Yellowbear*, 741 F.3d at 62-63 (quoting *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011)). Plaintiff has offered two alternative schemes: (1) making an exception and/or accommodation for him to bring his Bible to work; (2) reassigning him to another job or program in which he could carry his Bible on his person. Docket No. 114 at 16. Williams argues that "[a]llowing only [plaintiff] to carry a Bible on his person at all times would likely lead to additional inmates requesting the same exception," which would lead to an increase in the number of inmate searches to be performed. Docket No. 93 at 20; *see also* Docket No. 119 at 9-10 (claiming that

---

[11] In his reply brief, Defendant Williams posits that AR 800-01 is the method by which CDOC furthers prison security, but the rule that led to plaintiff being denied access to his Bible was POR 302, not AR 800-01.

creating an exception for plaintiff "when he hasn't availed himself of the procedures in AR 800-01" would "interfere with the orderly running of the kitchen and ultimately the institution"). Williams further suggests that plaintiff "could also be subject to retaliation from other inmates if granted an exception." Docket No. 93 at 20. Williams makes no attempt to refute plaintiff's second suggested alternative. *See* Docket No. 119.

To the extent that Williams argues that the CDOC has no obligation to consider less restrictive alternatives when an inmate does not accept a readily available alternative offered by CDOC, such as AR 800-01, *see* Docket No. 119 at 9-10, the Tenth Circuit has recognized that an inmate's "rejection of alternatives the government offers doesn't address the question whether his suggested alternatives suffice to achieve the government's asserted compelling interest." *Yellowbear*, 741 F.3d at 63. Further, to the extent that Williams suggests that allowing plaintiff an exception would "interfere with the orderly running of the kitchen," plaintiff testified that he brought his Bible to his kitchen work assignment for "a little over a year" without incident before he was forced to work without his Bible on December 1, 2015. Docket No. 93-1 at 7, 19:5-12; *see also* Docket No. 114 at 7, ¶ 78; Docket No. 119 at 4, ¶ 78 (parties agreeing that, apart from the confiscation on December 1, plaintiff's Bible had never been confiscated from the kitchen before). Moreover, the CDOC allows inmates to wear religious medallions, rosaries, and medicine bags in the kitchens. *See* Docket No. 93-4 at 9. Plaintiff's pocket Bible – approximately three inches long, two inches wide, and one inch thick – is approximately the same size as an allowable Native American medicine bag – approximately two and a half inches long with an 18-, 20-, or 24-inch strap. *See* Docket No. 114 at 8, ¶ 88; *see also* Docket No. 93-4 at 9. Moreover, during Ramadan, Muslim

kitchen workers are allowed to bring copies of the Quran into the kitchen, Docket No. 93 at 8, ¶ 51, and, while not allowed to carry the Quran on their persons, are nevertheless allowed to take them through security and access them during prayer times, which would necessarily trigger all of the security issues Williams identifies regarding books. Nevertheless, CDOC allows this practice for a month each year. *Id.*, ¶ 52. Thus, it does not appear that there is a book-specific reason to preclude plaintiff from bringing his Bible to work. Further, Williams' argument that granting an exception would lead to an expansion of the number of inmate searches is speculative and unsupported by evidence. Williams identifies no such expansion of religious-based requests in response to the prison's Ramadan accommodation. The Court finds that Williams has failed to adequately refute plaintiff's first alternative accommodation.

Finally, Williams fails to address plaintiff's second alternative – that plaintiff could have been reassigned to a different work assignment or program that would not limit his religious exercise. *See* Docket No. 119. The Court finds that, by failing to demonstrate why plaintiff's alternative means are inadequate, Williams has failed to meet his burden of establishing that the current scheme is the least restrictive means of furthering the compelling interest. Thus, the Court finds that Williams has failed to meet his burden establishing that he is entitled to summary judgment, and the Court will deny Williams' motion to the extent it seeks summary judgment on plaintiff's RLUIPA claim.

### 2. First Amendment Free Exercise

Defendant Williams and the individual defendants (collectively, "defendants") also seek summary judgment on plaintiff's First Amendment free exercise claim. Docket No. 93 at 11-17; Docket No. 94 at 11-20. Defendants argue that they are entitled to

summary judgment on plaintiff's First Amendment claim because plaintiff cannot establish (1) a substantial burden on his religious exercise or (2) that POR 302 is not reasonably related to legitimate penological objectives. Docket No. 93 at 14-15; Docket No. 94 at 20. In the alternative, the individual defendants argue that they are entitled to qualified immunity on plaintiff's First Amendment claim. Docket No. 94 at 12.

"Under the First . . . Amendment[], inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Religious practices need not be central or required in order to be protected under the First Amendment. *Kay v. Bemis*, 500 F.3d 1214, 1220 (10th Cir. 2007). "The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Id.* at 1218. Then, the incarcerated plaintiff must show that a prison regulation "substantially burdened [his] sincerely-held religious beliefs." *Id.* (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). A violation of the First Amendment's free exercise clause can occur not only due to outright prohibitions, but also where government indirectly coerces or penalizes the free exercise of religion. *Abdulhaseeb*, 600 F.3d at 1316 (discussing *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)).

If a prisoner satisfies the substantial burden inquiry, prison officials may then "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Kay*, 500 F.3d at 1218 (internal quotation marks omitted) (alterations in original). "The burden then returns to the prisoner to show that these articulated concerns were irrational." *Id.* at 1218 n.2 (internal quotation marks omitted).

### a. Substantial Burden on Sincerely Held Beliefs

The parties do not dispute that plaintiff's belief that he must keep his Bible on his person or in his immediate vicinity at all times is religious in nature and sincerely held. *See* Docket No. 94 at 2, ¶¶ 3-5; Docket No. 113 at 1-2, ¶¶ 3-5; Docket No. 120 at 2, ¶¶ 4-5; *see also* Docket No. 93 at 12 n. 1. To determine whether plaintiff has made an initial showing of a substantial burden on religious exercise, courts use the same test under the First Amendment as is used under RLUIPA. *Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (unpublished) (citing *Abdulhaseeb*, 600 F.3d at 1312-15; *Gallagher*, 587 F.3d at 1069-70); *see also McKinley v. Maddox*, 493 F. App'x 928, 933 n.4 (10th Cir. 2012) (unpublished) (stating that the definition of "substantial burden" set out in *Abdulhaseeb* for RLUIPA claims also applies to First Amendment free exercise claims).[12] As set out above, the Court finds that POR 302 constitutes a substantial burden on plaintiff's religious practice. Thus, the burden shifts to defendants to demonstrate that the substantial burden is justified by legitimate penological interests.

---

[12] Defendants argue that, because there is no published Tenth Circuit case setting out this definition of "substantial burden" in the First Amendment context, "it is not entirely clear, in this circuit, which 'substantial burden' test applies to a First Amendment claim, as opposed to one under RLUIPA." Docket No. 93 at 13 (noting that the 1995 case of *Werner*, 49 F.3d at 1480, sets out different definition for "substantial burden" in First Amendment context); Docket No. 94 at 14 (same). The Court disagrees and finds that two recent unpublished Tenth Circuit opinions cited above (*Strope*, 381 F. App'x at 881 and *McKinley*, 493 F. App'x at 933), as well as a decision from another court in this district, *see Jenner v. Sokol*, No. 11-cv-01497-RBJ-KMT, 2013 WL 500400, at *7 (D. Colo. Feb. 11, 2013) (using the RLUIPA definition of substantial burden in First Amendment context) provide sufficient guidance to direct the Court to apply the same RLUIPA substantial burden test to First Amendment free exercise claims.

**b. Legitimate Penological Interests**

To determine whether a legitimate penological interest justifies burdening

plaintiff's religious belief, courts balance the factors articulated in *Turner v. Safley*, 482

U.S. 78 (1987):

> (1) whether a rational connection exists between the prison policy
> regulation and a legitimate governmental interest advanced as its
> justification; (2) whether alternative means of exercising the right are
> available notwithstanding the policy or regulation; (3) what effect
> accommodating the exercise of the right would have on guards, other
> prisoners, and prison resources generally; and (4) whether ready, easy-to-
> implement alternatives exist that would accommodate the prisoner's
> rights.

*Kay*, 500 F.3d at 1219 (quoting *Boles*, 486 F.3d at 1181).  "Analysis of the four *Turner*

factors is necessary at the summary judgment stage."  *Al-Owhali v. Holder*, 687 F.3d

1236, 1240 (10th Cir. 2012).  The Court must, "on a case-by-case basis, . . . look

closely at the facts of a particular case and the specific regulations and interests of the

prison system in determining whether prisoners' constitutional rights may be curtailed."

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).

**i.   Rational Connection to Government Interest**

First, the Court must determine whether the regulation has a rational connection

to a legitimate government interest.  This *Turner* factor "is not simply a consideration to

be weighed but rather an essential requirement."  *Al-Owhali*, 687 F.3d at 1240 (internal

quotes omitted).  This factor is two-fold: "[t]he court must determine whether the

governmental objective underlying the regulation is legitimate and neutral and whether

the regulation is rationally related to that objective."  *Sperry v. Werholtz*, 413 F. App'x

31, 40 (10th Cir. 2011) (unpublished).

Here, it is undisputed that the CDOC has significant penological interests in ensuring that no contraband is introduced into or smuggled out of the kitchen. Docket No. 93 at 4, ¶ 20; at 6, ¶ 36; Docket No. 114 at 3, ¶ 20; at 4, ¶ 36. This concern, as it relates to prison security, is a legitimate CDOC interest. *Cf. Cutter*, 544 U.S. at 725 n.13 (recognizing prison security a "compelling" state interest). Further, the policy is neutral, banning all personal items, with limited exceptions, rather than banning items based on their nature, type, or religious affiliation. Docket No. 93 at 4, ¶ 21.

"To show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned materials actually caused problems in the past, or that the materials are 'likely' to cause problems in the future." *Sperry*, 413 F. App'x at 40. Rather, the court must be satisfied that "the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests." *Id.* (citing *Amatel v. Reno*, 156 F.3d 192, 199 (D.C. Cir. 1998)). It is undisputed that "[i]tems such as razor blades, sharp metal objects, and notes advocating violence . . . have been found in books at SCF," that "pages of books have been carved out to conceal contraband," and that "contraband has been hidden in the seams of books." Docket No. 93 at 6, ¶ 38. The Court finds that defendants' judgment in enacting a policy that generally bans books from the kitchen was rational and could reasonably have been considered to advance its interests. As a result, the Court finds that defendants' policy is rationally connected to a legitimate governmental interest.

### ii.   Alternative Means of Exercising Religion

Next, the Court must consider whether there is an alternative means of exercising the religious belief.  *Beerheide*, 286 F.3d at 1186.  Defendants argue that plaintiff has alternative means to exercise his religious practices because "[his] claimed need to have a Bible available is to reference it when [he] preaches to others," and that he "is fully able to engage in these activitie[s], with his Bible, when he is not working and in his housing unit."  Docket No. 93 at 16; Docket No. 94 at 17-18.

The Court finds that this factor weighs against defendants.  First, plaintiff disputes that his claimed need to have the Bible on his person at all times is to preach to others.  *See* Docket No. 114 at 2, ¶ 6 (stating that he carries his Bible at all times "because he believes that the text of the Bible commands him to do so," not for the purpose of preaching to others).  Thus, the substantial burden placed upon plaintiff is that he cannot have his Bible on his person for 28 hours per week – not that he cannot preach to others while he works.  *See id.*  Leaving the Bible in plaintiff's cell for 28 hours per week while he works is not an alternative means of carrying his Bible at all times. Defendants have not demonstrated that plaintiff has an alternative means of exercising his religious belief of having his Bible on him at all times.

### iii.   Impact on Guards, Other Inmates, and Prison Resources

Turning to the third *Turner* factor, the Court must determine what effect accommodating plaintiff's religious exercise would have on guards, other prisoners, and prison resources.  *Turner*, 482 U.S. at 90.  Defendants argue that "the undisputed evidence shows that the effect of accommodating plaintiff would be burdensome" because the DOC would have to "devote resources to providing additional screening

methods [and] entertain ad hoc exceptions sought by other inmates." Docket No. 93 at 16-17; Docket No. 94 at 18. Defendants do not cite the purported undisputed evidence that demonstrates this supposed burden that would result in the event of an accommodation. *See id.* In fact, as set out above in the Court's RLUIPA discussion, Williams failed to even respond to plaintiff's suggestion that he could be accommodated by being placed in a different work assignment in which he could keep his Bible. *See* Docket No. 119 at 9-10.

Having cited no evidence in support, the Court finds defendants' arguments speculative and unsupported by the undisputed facts. *See Beerheide*, 286 F.3d at 1190 (finding defendant's evidence about the potential impact of an accommodation to be "tenuous, at best" where defendant "point[ed] to only two pieces of testimony to support its claim"). "[W]hile courts must defer to prison officials on such matters, *Turner* and its progeny do not give prison officials absolute deference. They must still make their case by presenting evidence, however minimal that evidence might be." *Id.* Defendants have not presented any evidence establishing that accommodating plaintiff's religious exercise would be overly burdensome on guards, inmates, or the allocation of prison resources. This factor weighs in favor of plaintiff.

### iv.   Policy Alternatives

The fourth and final prong of the *Turner* test considers the presence or absence of ready alternatives that would fully accommodate plaintiff's rights at *de minimis* costs to valid penological interests. *Turner*, 482 U.S. at 90. Defendants cursorily argue that "there are no ready, easy to implement alternatives." Docket No. 93 at 17; Docket No. 94 at 18. But defendants have failed to refute plaintiff's proposed accommodations:

(1) making an exception and/or accommodation for plaintiff to bring a softbound, pocket-sized Bible into the kitchen, as he was allowed to do previously; or (2) reassigning plaintiff to another job or program outside of the constraints of POR 302 and any POR that would preclude him from carrying his Bible.  In sum, defendants have failed to "make their case by presenting evidence, however minimal that evidence might be." *Beerheide*, 286 F.3d at 1190.  Defendants have not refuted plaintiff's claim that ready, easy-to-implement alternatives exist that would accommodate his religious exercise. This factor weighs in favor of plaintiff.

The Court's review of the *Turner* factors demonstrates that plaintiff has established that there are genuine issues of material fact as to whether POR 320 is reasonably related to legitimate penological objectives.  For this reason, the Court will deny Williams' motion for summary judgment on plaintiff's First Amendment claim and will deny the individual defendants' motion for summary judgment to the extent that it argues that plaintiff cannot prove a First Amendment claim.

### c.  Qualified Immunity

In addition, the individual defendants argue that they are entitled to qualified immunity on plaintiff's First Amendment claim.  Docket No. 94 at 13.  Government officials are entitled to qualified immunity from a lawsuit arising out of their official duties unless the plaintiff can show "that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct."  *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  In contrast to a standard motion for summary judgment – which places the burden on the moving party to demonstrate the lack of a genuine issue of material fact –

a motion for summary judgment based on a claim of qualified immunity shifts the burden to the non-moving party. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013) (citation omitted). Accordingly, a plaintiff opposing a motion for summary judgment on the basis of qualified immunity must carry a two-part burden. *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1183 (10th Cir. 2009). First, he must show that "a 'favorable view' of the facts alleged show[s] the violation of a constitutional right." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009)). Second, he must show that the right violated was clearly established at the time of the defendant's actions. *Serna v. Colo. Dept. of Corrs.*, 455 F.3d 1146, 1150 (10th Cir. 2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

When claims are brought against defendants in their individual capacity, a plaintiff must also allege personal involvement to establish personal liability. *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (finding the district court erred in failing to grant qualified immunity where the record "failed to identify specific actions taken by particular defendants that could form the basis" of a constitutional violation).

### i.   Violation of a Constitutional Right

Defendants first argue that plaintiff cannot prove a violation of a constitutional right because he cannot prove (1) that a substantial burden on his religious exercise exists or (2) that the restrictions are not reasonably related to legitimate penological objectives. Docket No. 94 at 13-16. However, as discussed above, plaintiff has

presented sufficient evidence demonstrating that POR 320 constitutes a substantial

burden on plaintiff's religious practice and genuine issues of material fact exist as to

whether POR 320 is reasonably related to legitimate penological objectives.  As a

result, the Court finds that "a favorable view" of the facts shows the violation of a

constitutional right.  The Court must determine whether this constitutional right that was

purportedly violated was "clearly established" at the time of the challenged conduct.

*Serna*, 455 F.3d at 1150.

### ii.   Clearly Established Law

Plaintiff bears the burden of establishing that the law at the time of the

challenged conduct was clearly established.  A constitutional right is clearly established

for the purpose of qualified immunity if "its contours [are] sufficiently clear that a

reasonable official would understand that what he is doing violates that right."  *Hope v.

Pelzer*, 536 U.S. 730, 739 (2002); *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012)

("The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted.") (internal citation omitted).  In other words, the "salient"

question is whether "the state of the law" at the time of the defendant's challenged

actions afforded "fair warning" that those actions were unconstitutional.  *Hope*, 536 U.S.

at 741.

Law is clearly established when a Supreme Court or Tenth Circuit decision is on

point or if the constitutional question is "beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S.

731, 741 (2011); *cf. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003).

However, it is not necessary that prior cases evidence an identical set of facts.  *Pierce*

*v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). "[A] case directly on point is not required so long as 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *A.N. by and through Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). "The dispositive question in all cases is whether 'the violative nature' of the particular conduct at issue is clearly established." *Id.* Moreover, defining clearly established law must not be done "at a high level of generality." *al-Kidd*, 563 U.S. at 742 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)); *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (stating that too general a formulation would "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability").

Plaintiff has not presented the Court with an analogous Supreme Court or Tenth Circuit case establishing that the right to possess a religious text during a kitchen work assignment (or any work assignment) was clearly established at the time of the challenged conduct. *See* Docket No. 113 at 16. Instead, plaintiff argues generally that an inmate has a right to have "a reasonable opportunity to pursue his or her religion." *Id.* Plaintiff's formulation of the purported right at issue here is too general. Accepting such a high "level of generality" would "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability." *Anderson*, 483 U.S. at 639.[13] The Court thus rejects plaintiff's classification of this right. *Cf. Weise v. Casper*, 593 F.3d 1163, 1168

---

[13] The cases relied upon by plaintiff do not support his position. *Akeem Abdul Makin v. Colorado Department of Corrections*, 183 F.3d 1205 (10th Cir. 1999), discusses the constitutional protections in place for religious dietary restrictions. *Id.* at 1210 n.4. And *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), does not discuss the qualified immunity doctrine at all, providing no support for plaintiff's position that the right at issue here was clearly established. *See id.*

n.1 (10th Cir. 2010) (finding that framing of clearly established right as "right to be free from viewpoint discrimination" was "too general for the qualified immunity analysis where a plaintiff has the burden of demonstrating . . . a violation of clearly established law"); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (finding that "Court of Appeals' formulation of the clearly established right was far too general" where right was defined as the "right to be free of excessive force").

Because plaintiff has failed to present any legal authority demonstrating that the right was clearly established, the Court finds that plaintiff has failed to meet his burden of demonstrating a clearly established right. *See Comprehensive Addiction Treatment Ctr., Inc. v. Leslea*, 552 F. App'x 812, 816 (10th Cir. 2014) (unpublished) (finding that plaintiffs had failed to meet burden of demonstrating clearly established law where they had "not cited any authority in which courts have found that a plaintiff's constitutional right . . . was 'clearly established' in analogous factual situations.").

Because plaintiff has failed to meet his burden of demonstrating that the law was clearly established at the time of the actions he now challenges, the individual defendants are entitled to qualified immunity from plaintiff's First Amendment free exercise claim. *See Quinn v. Young*, 780 F.3d 998, 1015 (10th Cir. 2015) (where plaintiffs had failed to carry burden of identifying cases that constituted clearly established law, defendants were entitled to qualified immunity). The Court will grant the individual defendants' motion for summary judgment to the extent it seeks summary judgment on plaintiff's First Amendment claim based on qualified immunity.

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that Individual Defendant's Unopposed Motion for Judgment on the Pleadings on the Individual-Capacity RLUIPA Claims [Docket No. 107] is **GRANTED**.  It is further

**ORDERED** that Defendant Dean Williams' Motion for Summary Judgment [Docket No. 93] is **DENIED**.  It is further

**ORDERED** that Defendants Felicia Brooks, Steven Bade, and Earlleena Clark's Motion for Summary Judgment [Docket No. 94] is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.  It is further

**ORDERED** that plaintiff's first and second claims for relief are dismissed against defendants Felicia Brooks, Steven Bade, and Earlleena Clark.

DATED September 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge